Case 13-4219, U.S.A. v. Richard Miezin, Oral Argument, 15 minutes per side. Ms. Rudderhurst for the appellate. Good morning. I'm here arguing on behalf of Richard Miezin asking this court to find that the government breached the plea agreement, in this case, several times. And what I want to start with is pointing out to some very specific examples of some of the comments and arguments made by the government which we believe are directly contradictory to the agreement. Did the agreement say anything about what they would argue? Well... I mean, I've seen some of these agreements which say the government will not argue something to the court. It doesn't say that, does it? What the agreement said here, and the issue we are talking about this morning primarily, is whether or not there is distribution for the purpose of receiving a thing of value in return. And the agreement specifically stated that the two-level enhancement distribution applied, and specifically stated the five-level enhancement for a thing of value did not apply. It doesn't say what they'll argue, though. It just says it doesn't apply. It doesn't. I don't know what that means in a plea agreement, just to say this, because everyone knows that the court can second-guess that, right? Absolutely, and it was litigated... So you say, we agree this, but the court may do something different. Is that an undertaking not to argue something? I think in this particular instance, it is actually a violation or a breach of the agreement because the government did argue, agreed with the court, and specifically stated, we do agree with the court, we do agree with the probation department, that... I'm asking where in the agreement it says they can't do... Let's assume that they said, Judge, we think you should reject this and do a five-level instead of a two-level, all right? Which isn't what happened, but if they had said that, what in the agreement would be violated? I think the agreement, because it specifically stated that it was for distribution, but not for a thing of value. It doesn't say he won't argue something different to the court. That's what I'm asking about. Right. It's just sort of implicit in the... I mean, I don't understand what these words mean. They say, in the agreement, you know, we agree to this. It doesn't say, but we promise never to argue anything to the contrary, or does it? Well, I think it does because they specifically agreed as to what the base-level offense would be, what enhancements applied, and what range that put Mr. Misen in pursuant to the agreement. And I think when you look at the cases that we cited, the Grandinetti-Brown in Canada, it talks about the spirit of the agreement, and I think that's really... So it's the spirit of the agreement you're relying on. As one argument, yes, I do. There's no language in the agreement that says you can't argue this. It's just that there's some language about what enhancements should apply. Sure. And the spirit of that is they should be arguing against something they agreed to. Correct. But that's different from saying you violated the agreement. It's violating the spirit of the agreement. Well, I would respectfully disagree only because I do believe the agreement limited the government to, look, they agreed this is the base level, these are the enhancements. What if the district court said this is what you agreed to, but what is the theory for that? And in response to the judge's question, they answer the question. Are they just supposed to say I'm not going to answer your question under this agreement? I mean, because we're talking about the spirit of the agreement now. We're not talking about you will not utter the following words, in which case presumably if it said you will not utter the following words, the lawyer might say, well, I refuse to answer, Judge. Well, they could. But I think the better practice would have, and that is sort of what happened here. The judge did ask. Sort of, kind of, but not precisely the same. Asked the government. He asked questions. And the government specifically said, they actually made a few comments there that I think are really telling. We agree with the probation department's PSR. We agree with you, Judge. We found the same things ourselves. I mean, they made statements that were, again, in our position. They explained why they came to a different conclusion, though, right? Well, but calling it a mere negotiation tactic, to me, that's being what they characterize in those three cases I just referenced as not having the degree of advocacy they should have in honoring their agreement. But that's why I'm saying now it seems like the spirit requires them to advocate. I think it does. I think it requires them to advocate. That's reading a lot into their obligations, though, isn't it? Yeah. Well, you know, the . . . To say that when the judge tests them on it, they have to take your litigating position. I'm not saying they have to take the position of the defendant. Certainly I don't. The government was free to argue for a sentence they felt to be appropriate in the guideline range that they agreed upon with defense counsel. Knowing that the judge can do something different didn't have to . . . But in the course of that colloquy, isn't it true that the government, in fact, affirmed their negotiated agreement, answered questions that talked about the distribution element? And I know you say they undermined or did an en run around the agreement, but what's the specific language that you say was tantamount to the breach of the agreement? Because they did say, Judge, this is our agreement. We stand by that. But they didn't do the advocacy that you're talking about. But what was the breach? Well, one of the most, in my position, obvious examples is at the sentencing hearing, on page 104 of the sentencing hearing, the government specifically asked the court to impose a sentence that was in the court's calculated guideline range, not in the guideline range as agreed upon by the parties. So they specifically stated that. The court also asked prior to that, after they were discussing the two versus the five level, the court said to the government, do you have any objection to the guideline range that I have calculated, which included the five level, and the government said no. But didn't the agreement bind the government to the court's calculated guidelines calculation as long as it was in the guidelines? Isn't that what the agreement spoke to? It was, but again, I think the more critical issue here is that the government agreed in the plea agreement that what applied was the two-level distribution, not for a thing of value. And so I think when they begin arguing against that and saying there was a thing of value, I think that's where the breach occurred, and that started as early as the sentencing memorandum. But didn't they, in fact, explain on this thing of value that a thing of value didn't necessarily mean monetary value? And that's what that exchange was about, wasn't it? It was. Beginning in their sentencing memorandum, they talked about how broad of a definition thing of value is, that they actually called children in this particular market, in this particular fence, children or their commodity. They did. That started very early on when they were talking about what it is that a thing of value is, which I think actually lends value to our argument that from the time of submitting sentencing memorandum to the court, the government was arguing, yeah, I know we agreed that it wasn't for a thing of value, but, judge, I think you should consider that it was. How can a statement or an expression of settled and established law be characterized as breaching the agreement? Because what they said was not a misstatement of the law, and this came in the context of a colloquy with the judge, but they still said we stand by our negotiated agreement. So how can that be tantamount to a breach? Well, because what we're talking about is how that law, that statement of the law applies to the facts in this particular case, which goes to our second assignment of error on whether or not this actually was distribution for a thing of value and the argument about whether it's hope versus expectation and what the law actually requires. So while I agree with you that, yes, the government may have accurately stated the law, what they did was they argued that that particular thing of value applied to Mr. Misen, which, again, pursuant to their agreement, they agreed was not the case. And I think by them simply stating, yes, we stand by our agreement, their actions prior to that, including in the sentencing memorandum and at the hearing, were contrary to that statement. Let me just tell you what I think happened here, and if you can convince me otherwise, you're in good shape. The plea agreement went down. You didn't have anything to do with that. Is that right? You weren't at the sentencing hearing. No, Your Honor. Okay. This claim by the defendant that the government is pushing for a five-level enhancement somehow appears to me to be based on a footnote in the government's sentencing memo referring to the five-level increase. It would fit under the facts of this case. But it was put in there only to show that, in fact, a downward variance that the defendant had then requested was inappropriate because of the serious misconduct of the defendant. Now, that's how this whole thing started. And the question really was, was there going to be, was the defendant going to take it out of that plea agreement and get a little more out of the court because the plea agreement did say that the court could, in effect, do whatever the court wanted to do? And that's the point at which the government started saying, wait a minute, you know, we've already given you quite a bit here. We've agreed to a two-level instead of a five-level, and this is very serious conduct. It's more serious. I mean, this sentencing thing is full of all these letters about what a good guy this was and how he goes to church and he's got a family and all these people love him dearly. It was part of an effort to convince the court to go below what the agreement was. Well, in that case, the government is going to begin to argue that the whole thing was a lot more serious than all these letters and all this support made out. If I can, I know my time is up. Oh, yeah, please. And again, we were not involved, but it was my understanding that what actually triggered this was not only the government sentencing memorandum where that footnote was made, but also because the probation department was going back and forth between counsel about their recommendation to the court, and I believe it was at that point that the government was advocating, yes, we actually do agree with you that a five-level applies versus a three-level. Well, theoretically. Theoretically, but they never urged the court to apply a five-level. They never did that. I've read the sentencing memos and I've read the sentencing hearing transcript. It didn't happen. Again, Your Honor, what we're really looking at, and I'm citing to those three cases I cited in my reply brief about violating what we talked about, the spirit of the agreement, and so we would disagree that. But who violated the spirit of the agreement first? That's really the question. I'm sorry, but that's the way I see it. Yes, Your Honor. I'm out of time. Thank you very much. May it please the Court. My name is Dan Rehnke. I represent the government. I think the best evidence that the prosecutor didn't violate the plea agreement here is in the sentencing transcript of the sentencing hearing. Opposing counsel pointed out that the AUSA did say, for this reason, we're asking for a sentence within the guideline range as calculated by the court. That's at page ID 462. That's wrong. And the judge, actually, the district court, recognized that because he had seen the whole exchange between the parties and the whole thing. And the judge then said, just so it's clear, you're asking for a sentence within the parties' plea agreement, 34, 151 months to 180 months. The AUSA said, yes, Your Honor, I entered into that agreement and I stand by my agreement. There's nowhere where, as Judge Daughtry pointed out, there's nowhere where the AUSA ever asked for a five-level enhancement. The part that troubles me is I'm on 366 of the page ID where the judge asks him a question. He answers it. I don't have too much problem with that. But then he says, before he gets into the answer, I would disagree with the defense counsel's representation that this is like other peer-to-peer cases. Giga Tribe is very different. That's not really in response to the question and supports a five-level rather than a two-level. So I guess you could argue, it sure seems like maybe with a wink and a nod that's what's going on, that he's saying their argument that it's not five is wrong. Isn't that what he's doing there? Are you with me? You know where I'm talking about? Yeah, I know exactly where you're talking. Because it had been preceded by the court, first of all, talking about how the PSR recommended this five-level enhancement. And then they asked defense counsel to respond, whether it should be a five-level enhancement. Defense counsel then goes into some 11th Circuit cases about how there needs to be a quid pro quo and pretty much an express quid pro quo to have it be the five-level. And then the government counsel just can't help himself. He's got to say, you know, that's wrong. I think they're also walking a fine line from the government standpoint. You have the PSR and you have the court, and the court hasn't said yet they're going to apply the five-level enhancement at this point in the sentencing transcript. But the court has pretty much indicated that's where they're going. I mean, if you look at the couple pages before that in the transcript, the court's kind of arguing with defense counsel about that it wasn't just GigaTribe, you know, that he belonged to GigaTribe, that he was part of GigaTribe, but that it was also that he requested images, that he sent images and chats, and that there were other things. It wasn't just this kind of passive, you're part of a network, that he was more active. And I think at this point the prosecutor is somewhat walking a fine line with the court because they have recommended a two-level. And in here they do talk about generally they don't really explain why it was two versus five. They just say it was a negotiating tactic. That I understand. He's asked the question, why did you do it? He says, I was negotiating. It was weak or whatever. I understand that. You've got to answer the question. I'm not saying you shouldn't answer the question when a judge asks you, right? I'm just saying this part here looks like he stepped beyond that and made arguments that were inconsistent with what. Well, I don't know whether my second question, which is independent, is what exactly is a plea agreement that says, we agree this is the level that should be applied when everyone acknowledges that the district court isn't bound by that? What does that agreement mean? Does that mean that they won't argue something? Is that sort of the general understanding? Because it doesn't say we won't argue. It just says I agree this is the number. It doesn't, and it says the parties are free to argue for whatever sentence they feel is appropriate. It says what? The agreement says the parties are free to argue for whatever sentence they feel is appropriate. So it doesn't say they can't argue. It just says we agree that this one should apply rather than that one. Now, I suppose that has some operative effect because later on what you can appeal depends on whether it's inconsistent with the plea agreement calculations. But other than that, what's the operative effect of this agreement, that a certain enhancement applies or not? Is it intended to restrict what the lawyers can argue before the judge? Or what is it intended to do? Do you see what I'm asking? I'm trying to see what the content of the contract is. Yeah, and I think if you look at the plea agreement, it is, I think, intended to restrict the parties to what the parties agreed, and that's what they say. So it's intended to restrict what they argue there. I think it is to a certain extent because you're looking at, you know, ultimately the AUSA stuck to the agreement, so this is what I'm asking for. So if this is what they, if they agree to several steps in the agreement, then they agree not to argue against those steps. That's what you're saying, right? It's a little inconsistent because the agreement also says the parties can ask for whatever they wanted and then Mr. Mizen asked for a... Then I wonder whether it's like an incoherent agreement. I find these agreements, they're all different, everyone's different, and some of them are explicit and some of them say stuff. I always wonder what they mean. I know. We try to go for more consistency occasionally. We don't always succeed. What exactly did the, I mean, the end result is that he got what he bargained for. Am I correct? What he did, Judge Adams actually found that the five-level enhancement applied, but then he varied downward based on some of the familial support, basically. Their argument is if you hadn't made this argument, he would have varied down from something different. Right. Well, if he'd varied down from something different, was he not going to end up below the plea agreement? If he had found the level to be 34 and varied down, yeah, he would have. The agreed level was 151 to 188, and the defendant comes in and wants what? A downward variance based on . . . Yeah, would it have taken it below 151? I believe if the judge would have agreed with him based on the factors, it probably would have. Comparable variance would have taken it. Comparable variance would have taken it. So where the defendant comes in and is asking for, in the base of the plea agreement, a downward variance that might take him below the floor of the plea agreement, what then is the prosecutor, in your argument, legally able to do in the base of the agreement and the argument for the downward variance? I think what the prosecutor did here, which was say, these are the facts of the case, and you should give a sentence within the advisory guideline range that we agreed in the plea agreement, and that's really ultimately what the government asked for here. But what he wants is an agreement without a variance within the range that the plea agreement suggested, and what the district court . . . Who's he? The prosecutor. Okay. The district court instead gives a higher range and varies, so changes in two ways from what the prosecutor wants, and they cancel each other out. That's basically what happened. Ultimately, yes. I mean, if the district court would have just . . . And your opposing counsel wants it where one of those happens but the other one doesn't. I mean, if the district court would have just found a level 34 criminal history 1 and imposed a 168-month sentence, we wouldn't be here. And the prosecutor is a little bit vague at one point in what he's suggesting because he does say no variance from what you calculate when there's some hint that the calculation is going to be higher. So it sounds a little bit like he's asking for something higher, and then the court says, well, what exactly are you advocating? And he says, this number, I guess. Ultimately, they advocated for the number that was agreed upon, and that's really what the defendant received. Do you have a question? No. Thank you, counsel. Okay. Thank you, Your Honor. Just a few very brief points on that. Judge Rogers, going to the conversation you were just having, I do think that the purpose of the agreement was to limit the arguments made by counsel. And I guess my question to this court would be, similar to what I think you were alluding to, what is the purpose of entering into a plea agreement where we agree these are the particular enhancements that apply if counsel is permitted to argue outside of that? I think the discretion in the plea agreement as to what arguments can be made was what arguments can be made to vary from the calculated guideline range, but the calculated guideline range was different. You know, I still think, I'm sorry, but if he had not mounted, if the defendant, I'm going to identify my he, if the defendant had not mounted this huge effort, all these letters and all of this to try to get the judge down, I'm going to bet that there would have been none of this conversation from the U.S. attorney. He would have simply said, Your Honor, this is our agreement. Your client would have come in and said, this is what we've agreed to, and the prosecutor would say, sure is, and that would have been the end of it. The reason I think that that may not be the case, Your Honor, is because, number one, I do think he should certainly have the right to present letters of support and things like that, but he was trying to convince the judge that this was completely out of character, that, no, he didn't have any interest in, he had what was on his computer, and that was a terrible mistake, but he'd been through some kind of treatment and it was all over, and what he did was really not all that bad in the first place. And, in fact, several people, including the probation officer and including the prosecutor, knew that this gigatribe thing meant that it was a whole lot more serious than he was presenting to his church and his neighbors and his family and all the rest of it. I mean, that's what sparked this whole thing, isn't it? I think what actually sparked it was the probation department in the PSR process because they, it's my understanding, again, we weren't there, it's my understanding that's what prompted this whole legal discussion about the two-level versus the five-level. Sure, but the probation department was not a party to the agreement. They're just doing their job. Right, but I think that was the issue is because I think then, from that point forward, the government was backing their position and was doing so to the core. Well, okay, that's your reading of it. Exactly, that's the point that we were trying to make, unless there's any other questions. My concern is slightly different from, I understand Judge Daughtry's concern, but my concern is, I guess, expressed a little differently with your position, and that is if we're talking about sort of a sense of the agreement or what this agreement possibly means, it could mean you have to never say anything inconsistent with the rationale that goes into the plea agreement, or it could mean you are precluded from directly opposing the answer that this agreement, or it could mean something in between. And because it's implicit and a spirit, it's a little hard to tell exactly what that is. So then the question becomes, what if the judge asks you a question? Can you opine a little bit in response to the answer to the question? And it would seem to me that a reasonable answer would be, if the agreement is as mushy as it is as to exactly what the lawyers are precluded from doing, that answering a question of the judge ought to be okay. How would you respond? Do you see what I'm saying? I do, I do. I agree. I think if the judge asks a question that is, I don't want to say inviting a response outside of the plea agreement, but is asking the government, what is your position? I think the government could have said, well, Your Honor, we did negotiate the two-level distribution because they said it wasn't very clear. They could have said, because it wasn't clear that a distribution for a thing of value occurred here, and that's why. But they really backtrack. They're backpedaling an answer ahead. They did backtrack a little bit, but it sounds like they're saying, you know, generally we don't agree with that theory, but we had some problems with it here, and that's why we did it. And that's part of the ex- It could be treated, this paragraph that I'm having trouble with, one way to read it is, this is slipping in an argument that they otherwise are not supposed to slip in, which is how you would characterize it. And the other way to read it is, he's trying to give a fairly nuanced answer to a question about why you didn't do something. It's just sort of a characterization problem, isn't it? It is, and to that regard, I think if there's an ambiguity or something about a plea agreement is unclear, I think that goes to the favor of the defendant. And I think if this court's position is, look, the agreement is fairly inconsistent. You can argue what you want, but you have to argue A, B, and C. It's our position that clearly they argued against their position in the agreement, but if that's the case, then shouldn't that go to the benefit of the defendant? Thank you. Thank you very much. Thank you. The case will be submitted. And please call the next case.